2026 IL App (2d) 250464-U
No. 2-25-0464
Order filed January 9, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No.  25-CF-2180 |
| | ) ) | Honorable |
| ROSALINDA VACA, | ) ) | Michael G. Nerheim and James Newman, |
| Defendant-Appellant. | ) | Judges, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Presiding Justice Kennedy and Justice Birkett concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The trial court did not err in granting the State's petition to deny defendant pretrial release and ordering defendant detained.

¶ 2   Defendant, Rosalinda Vaca, appeals from an order of the circuit court of Lake County granting the State's verified petition to revoke her pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)), as amended by Public Acts 101-652, § 10-255 (eff. Jan. 1, 2023) and 102-1104, § 70 (eff. Jan. 1, 2023) (we will

refer to these public acts collectively as the "Acts").[1] On appeal, defendant argues: (1) that the State failed to meet its burden of proving by clear and convincing evidence that defendant was charged with a detention-eligible offense, (2) that the State failed to meet its burden of proving by clear and convincing evidence that she poses a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case, and (3) that the trial court denied her a fair hearing. We affirm.

¶ 3                              I. STATEMENT OF FACTS

¶ 4                                   A. Background

¶ 5      On September 22, 2025, defendant was charged with one count of failing to report a motor vehicle crash involving death or personal injury (625 ILCS 5/11-401(b) (West 2024)), a Class 1 felony. The charges stem from allegations that following a motor vehicle accident where defendant fatally struck the pregnant victim, she left the scene.

¶ 6      On September 24, 2025, the State filed its verified petition to revoke defendant's pretrial release. The State specifically alleged that defendant was charged with a detention eligible offense under section 110-6.1(a)(1.5) of the Code (see 725 ILCS 5/110-6.1(a)(1.5) (West 2024)). The State further alleged that defendant's pretrial release would pose a real and present threat to the safety of a person, persons, or the community and that no condition or combination of conditions could mitigate the threat posed by defendant's release.

¶ 7                                 B. Detention Hearing

---

[1] Public Act 101-652 (eff. Jan. 1, 2023), which amended article 110 of the Code, has been referred to as the "Pretrial Fairness Act" and the "Safety, Accountability, Fairness, and Equity-Today (SAFE-T) Act." However, neither title is official. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

¶ 8　　A hearing was held on the State's petition on September 24, 2025. At the outset, the State offered into evidence a public safety assessment report, a memorandum from Lake County case No. 18-CM-2116, and defendant's driving abstract.

¶ 9　　In support of its petition, the State proffered that on September 21, 2025, officers responded to the scene of a hit-and-run car accident. The victim, who was 22 weeks pregnant at the time, was walking through an intersection when she was struck by defendant's vehicle. She was transported to the hospital where she and her unborn child were both pronounced dead. Officers spoke with two witnesses. The first witness saw the accident occur and called the police. He also obtained some footage of the accident. The second witness, the victim's boyfriend, was walking with the victim and saw the accident occur. He noted that the vehicle did not stop.

¶ 10　　Officers obtained surveillance from a nearby gas station. In the surveillance footage, defendant's vehicle is shown pulling into a gas station. After police vehicles drive by the gas station to the scene of the accident, defendant's vehicle leaves the gas station. Defendant never exited her vehicle and did not get gas prior to departing the gas station.

¶ 11　　On September 23, 2025, defendant turned herself in to the police. She stated that the road was dark and she was not wearing her glasses, which she normally does while driving. She claimed to be getting gas from the station. Defendant alleged that she did not notice any damage to her vehicle until the next day when she attempted to drive to work. She stated that her car was so badly damaged that she could not drive it. Defendant told officers that "she heard a thump."

¶ 12　　The State noted that defendant had a previous felony conviction for aggravated battery to a peace officer in 2001, for which she received probation. Defendant's driving abstract showed numerous traffic offenses. Of note, defendant had a 2014 conviction of speeding, a 2017 conviction of speeding, a 2018 conviction of improper lane usage, a 2018 conviction of speeding, a 2018

statutory summary suspension that was later rescinded, a 2019 conviction of speeding in a construction zone, and a 2024 conviction of speeding. Defendant's abstract also reflected that she received supervision in 2018 for reckless driving that was terminated as satisfied in 2019, which the State noted was reduced from driving under the influence. The Lake County Pretrial Services Public Safety Assessment Report placed defendant at Level 1, but noted her conviction for a violent offence, as recounted by the State. In addition, the report included a supervised supervision for retail theft terminated in 2009, and a judgment of bond forfeiture on a driving on a revoked license charge in 2005.

¶ 13   The State further noted that defendant was charged in Lake County case No. 18-CM-2116 with two counts of domestic battery. Although both charges were ultimately dismissed, defendant was placed on pretrial conditions of release while the charges were pending. A memorandum in the case file indicated that defendant's conditions of release required her to abide by a curfew and surrender her firearm owner's identification (FOID) card within 24 hours of her release. Defendant violated her curfew multiple times and failed to surrender her FOID card.

¶ 14   The State argued that defendant was seen on surveillance footage "actively choosing to leave after the police lights are seen coming to the aid of the victim," and "it is inherently clear based on the specific facts and circumstances of this case that she is a danger to the community." Based upon her prior violations of pretrial conditions of release and numerous traffic offenses, the State contended that there are no conditions that could mitigate the threat that she poses.

¶ 15   In response, defense counsel asserted that defendant turned herself into police. "She admitted and made a confession that she did not call the police," defense counsel indicated, which demonstrated that she was willing to cooperate with the police. Defense counsel admitted that "[l]eaving the scene of an accident means you have 45 minutes to call the police," and defendant

"did not do that." Defendant was, however, "adamant and honest about what's going on." Defense counsel further noted that defendant had a valid driver's license.

¶ 16    The trial court granted the State's petition and denied defendant pretrial release. In issuing its oral ruling, the trial court first considered whether the proof is evident and presumption great that defendant committed a detainable offense. The trial court emphasized that the State cited section 110-6.1(a)(1.5) in the petition, which involves any felony involving either the threat or the infliction of great bodily harm. See 725 ILCS 5/110-6.1(a)(1.5) (West 2024).   The trial court considered that the act of leaving the scene "involves the infliction of great bodily harm because that conduct *** occurred prior to the conduct that's detainable" and highlighted that "the legislature when drafting that language didn't use the term [']caused['] or any similar language." Thus, the felony committed in the instant matter involved the infliction of great bodily harm and was therefore detainable.

¶ 17    Regarding dangerousness and whether any conditions could be imposed that would mitigate the risk defendant's pretrial release posed to any person, persons, or the community, the trial court noted that defendant had a history of failure to comply with conditions of release. The trial court specifically stated that it did not consider the charges that were dismissed in case No. 18-CM-2116, but that there were memoranda emphasizing defendant's failure to comply with pretrial conditions prior to the charges being dismissed. Additionally, it found it important that defendant had a history of speeding and reckless driving. The court entered a written order summarizing its oral findings.

¶ 18                          C. Motion for Relief and Notice of Appeal

¶ 19    On September 26, 2025, defendant filed a "Motion for Relief Under the Pretrial Fairness Act." See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). In the motion, defense counsel first disputed

that defendant was charged with a detainable offense. Defense counsel alleged (incorrectly) that the Stated filed its petition pursuant to section 110-6.1(a)(1) of the Code, which requires a defendant to be charged with an offense for which a sentence of imprisonment, without probation, periodic imprisonment, or conditional discharge, is required by law upon conviction. See 725 ILCS 5/110-6.1(a)(1) (West 2024). The charges filed against defendant did not require a mandatory sentence of imprisonment. Defense counsel further disputed that defendant had multiple traffic-related convictions, because the offenses appeared only on her abstract and not a pretrial services report compiled by the State. Defense counsel also alleged that the specific facts did not demonstrate that defendant was a danger to the community and that her willingness to cooperate with the police later in the pendency of this case demonstrated that she would comply with conditions of release. Finally, defense counsel made allegations about the victim's criminal history and potential drug use.

¶ 20    A hearing on defendant's motion was held on September 29, 2025. At the hearing, defense counsel claimed that the trial court considered defendant to have "an extensive traffic history," and "that is how she is deemed dangerous." Defense counsel asserted that there was "no indication that her recklessness or intoxication caused [the] accident" and thus defendant's act of leaving the scene did not prove her to be a threat to the community. Further, defense counsel contended that defendant is not a danger because she has a valid driver's license. Defense counsel asserted that defendant's pretrial release should not have been denied because most of defendant's prior criminal history consisted of speeding convictions that were less than class A misdemeanors. Counsel contended that the "dangerousness element is not intended [to] be based on speeding tickets."

¶ 21 Additionally, defense counsel asserted that the trial court improperly considered that defendant had been charged with domestic battery in case No. 18-CM-2116. Defense counsel believed that because the case had been dismissed, it should not be relevant to defendant's current hearing on conditions of release.

¶ 22 Finally, defense counsel attempted to admit into evidence several documents related to the victim's prior criminal history. The trial court did not allow defense counsel to admit such evidence, stating that "I will not allow you to tell me about the victim's criminal history *** unless you're going to tell me that she purposefully had some beef with this individual, and there's some reason that she ran out in the middle of the street knowing the car is there." The trial court added, "I mean, what does her criminal history have to do with anything? How is it relevant to what happened that night other than she was struck by this defendant in the road ***?" Defense counsel asserted that evidence of the victim's criminal history was relevant because the court had not "established yet that [defendant was] the proximate cause of the accident."

¶ 23 The trial court denied the motion for relief. It noted that defendant had numerous convictions based on traffic violations which demonstrated a disregard for rules generally. This contributed to a danger to the community at large as driving a car "by it's [*sic*] very nature is public." Further, the trial court noted that it previously considered the memorandum regarding defendant's failure to abide by pretrial conditions in case No. 18-CM-2116, not the charges themselves. It further considered conditions of release such as monitoring but stated that "the Court does not have a monitoring device that could monitor where [defendant] is at all times," making the condition insufficient to mitigate the risk of defendant's release. On October 1, 2025, defendant filed a notice of appeal.

¶ 24                                    II. ANALYSIS

¶ 25    Article 110 of the Code, as amended by the Acts, abolished traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2024). In Illinois, all persons charged with an offense are eligible for pretrial release. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2024). To detain a defendant, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a detainable offense (725 ILCS 5/110-6.1(e)(1) (West 2024)), that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case (725 ILCS 5/110-6.1(a)(1)-(7), (e)(2) (West 2024)) or a high likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8), (e)(3) (West 2024)), and that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or the risk of the defendant's willful flight (725 ILCS 5/110-6.1(e)(3) (West 2024)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74. The Code further requires that "[d]ecisions regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention." 725 ILCS 5/110-6.1(f)(7) (West 2022).

¶ 26    In this case, no live testimony was presented. The parties proceeded solely by proffer. Accordingly, our review of the trial court's factual findings and its detention orders is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. Under *de novo* review, a reviewing court "perform[s] the same analysis that the trial [court] would perform using the proper standards." *People v. Ruhl*, 2021 IL App (2d) 200402, ¶ 69.

¶ 27 Here, defendant first argues in her motion for relief that the State failed to meet its burden of proving by clear and convincing evidence that she was charged with a detention-eligible offense. In its petition, the State alleged that defendant was charged with a qualifying offense under section 110-6.1(a)(1.5) of the Code. 725 ILCS 5/110-6.1(a)(1.5) (West 2024). Pursuant to section 110-6.1(a)(1.5), a defendant may be denied pretrial release if his or her pretrial release poses a real and present threat to the safety of any person or persons or the community and he or she "is charged with a forcible felony *** or any other felony which involves the threat of or infliction of great bodily harm or permanent disability or disfigurement." *Id*.

¶ 28 In arguing that she was not charged with a detainable offense, defendant entirely fails to address section 110-6.1(a)(1.5) of the Code. Rather, at the hearing on the motion for relief, defendant incorrectly alleged that the State filed its petition under section 110-6.1(a)(1) of the Code, which provides that a defendant may be detained when charged with a felony for which a sentence of imprisonment is required. 725 ILCS 5/110-6.1(a)(1) (West 2024). Defendant then argued that she was not charged with a detention-eligible offense because her charge of leaving the scene of an accident was probation-eligible. In her memorandum on appeal, defendant argues that under section 110-6.1(a)(6)(D) of the Code, she is not charged with a detention-eligible offense. See 725 ILCS 5/110-6.1(a)(6)(D) (West 2024) (unlawful possession of a firearm by a repeat felony offender). Defendant does not explain the significance of this section of the Code.

¶ 29 Thus, defendant never addresses the section of the Code under which the State brought its petition. Instead, defendant makes incorrect assertions as to the basis for the State's petition and cites irrelevant sections of the Code to argue that her charges are not detention eligible. Having failed to advance any argument regarding the relevant section of the Code (section 110-

6.1(a)(1.5)), we find that defendant has forfeited any such argument. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited[.]")

¶ 30    Defendant next argues that the State failed to prove by clear and convincing evidence that her pretrial release poses a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case (725 ILCS 5/110-6.1(a)(1)-(7), (e)(2) (West 2024)).

¶ 31    Under the Code, factors that a court may consider in making a determination of dangerousness, *i.e.*, that a defendant poses a real and present threat to any person or the community, include, but are not limited to: (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence, involved a weapon, or was a sex offense; (2) the history and characteristics of the defendant, including whether he or she has a prior criminal history indicative of violent, abusive, or assaultive behavior; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to any weapons; (8) whether, at the time of the current offense or any other offense, the defendant was on probation, parole, or any other form of supervised release from custody; and (9) any other factors, including those in section 110-5 of the Code (725 ILCS 5/110-5 (West 2024)), the court deems to have a reasonable bearing on the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior. 725 ILCS 5/110-6.1(g) (West 2024).

¶ 32    Here, the nature and circumstances of the case involved a car accident with a pedestrian that resulted in the death of the pregnant victim and her unborn child. 725 ILCS 5/110-6.1(g)(1)

(West 2024). Defendant is a convicted felon, with a history of violence and other criminal behavior. 725 ILCS 5/110-6.1(g)(2)(A) (West 2024). She also had a history of traffic offenses on her driving abstract, including convictions of speeding (including speeding in a construction zone) and a period of supervision for reckless driving. 725 ILCS 5/110-6.1(g)(2) (West 2024). While defendant was not on any type of supervised or other release from custody at the time of the instant offense, there was a memorandum from a previously dismissed case regarding her inability to comply with pretrial conditions of release. 725 ILCS 5/110-6.1(g)(8), (9) (West 2024). Based on the foregoing, there is clear and convincing evidence that defendant poses a risk to the community based on her history of violence, her criminal history, her repeated traffic offenses, and her disregard of former pretrial rules and conditions of release.

¶ 33    Defendant contends that she does not pose a real and present threat to the community because she had a valid driver's license at the time she committed the instant offense. Thus, she asserts, "the Illinois Department of Motor Vehicles allowed her driving privileges and the Circuit Court using petty offenses to determine dangerousness was unreasonable and not the intention of the legislature for the determination of dangerousness." We find this argument unpersuasive. As explained above, the legislature set forth factors the court may consider in making a determination of dangerousness. See 725 ILCS 5/110-6.1(g) (West 2024). These factors include "the history and characteristics of the defendant" (725 ILCS 5/110-6.1(g)(2) (West 2024)), to which defendant's driving record certainly relates.

¶ 34    Finally, defendant argues that she was not afforded a fair hearing. Defendant notes that the Code allows for the State to present "a pre-trial memorandum documenting arrests [and] prior pre-trial violations for prior cases" but finds it unfair that she was not allowed to provide evidence of the victim's criminal history and potential drug use. " 'The due process right provided by the

Illinois Constitution is the right to a hearing to determine whether pretrial release is proper. \*\*\* [T]his decision is issued after the court balances the defendant's fundamental right to liberty against the necessity of protecting the public.' " *People v. Ahern,* 2025 IL App (1st) 251390-U, ¶ 58, citing *People v. Presley*, 2023 IL App (5th) 230970, ¶ 41. The issue of whether a party received a fair hearing prior the entry of a pretrial detention order is a question of law reviewed *de novo*. *People v. Saucedo*, 2024 IL App (1st) 232020, ¶ 56.

¶ 35    While the Code allows for consideration of some characteristics of a victim or complaining witness, it is limited to characteristics such as the identity, age, and physical condition. 725 ILCS 5/110-6.1(g)(3), (7) (West 2024). In this case, the victim's criminal history and potential drug use is wholly irrelevant to defendant's conduct, as defendant allegedly hit the victim with her car, drove away, and failed to call emergency services. It is this conduct which is at the foundation of the State's petition.

¶ 36    Additionally, in arguing that she was denied a fair hearing, defendant asserts that the State made "speculative arguments that [defendant] was under the influence and [defendant's] intoxication was the cause of the crash and her conduct not to call the police." This is an inaccurate recitation of the facts, as the State made no claims regarding whether defendant was intoxicated. In fact, the arguments related to possible intoxication were presented by defense counsel. Accordingly, we do not find that defendant was denied a fair hearing.

¶ 37    In sum, we find that the State proved by clear and convincing evidence that defendant committed a detainable offense and that her pretrial release poses a real and present threat to the safety of the community, based upon the specific articulable facts of the case and that defendant was not denied a fair hearing.

¶ 38                                III. CONCLUSION

¶ 39    For the reasons set forth above, we affirm the judgment of the circuit court of Lake County.

¶ 40    Affirmed.